IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

        vs.                      Criminal Number 21-312

HECTOR RODRIGUEZ


- - - - -


Transcript of Sentencing held on October 3, 2023, in the
United States District Court, 700 Grant Street, Pittsburgh,
PA  15219, before the Honorable Arthur J. Schwab, United
States District Judge.


- - - - -


APPEARANCES:

  For the Government:    U.S. Attorney's Office
                            by Tonya Sulia Goodman, Esq.

  For the Defendant:     Bahuriak Law Group
                            by David S. Bahuriak, Esq.

- - - - -

  Court Reporter:        Deborah Ann Betzler, RPR, FCRR
                            700 Grant Street
                            Suite 6260
                            Pittsburgh, PA  15219

- - - - -


Proceedings recorded by mechanical stenography;
transcript produced by computer-aided transcription.

P R O C E E D I N G S

1

2          THE COURT:  Good morning.

3          MS. SULIA GOODMAN:  Good morning, Your Honor.

4          THE COURT:  This is the time and place that has been

5    set for sentencing in Criminal Number 21-00312-1.  I'd ask

6    counsel for the government to enter your appearance, please.

7          MS. SULIA GOODMAN:  Good morning, Your Honor.  Tonya

8    Sulia Goodman on behalf of the United States.

9          THE COURT:  On behalf of the defendant?

10         MR. BAHURIAK:  Good morning, Your Honor.  David

11   Bahuriak for Mr. Rodriguez.

12         THE COURT:  Welcome.

13      Sir, do you want to stand and be sworn, please.

14      (Defendant sworn.)

15         THE COURT:  Sir, do you understand that having been

16   sworn, your answers to my questions are subject to the

17   penalties of perjury or making a false declaration if you do

18   not answer truthfully?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  You may be seated and get comfortable,

21   please.

22      The Court notes for the record that on March 28, 2023,

23   pursuant to a plea agreement, defendant entered a plea of

24   guilty to a lesser-included offense at Count 1 of the

25   indictment charging the defendant with conspiracy, in

1   violation of Title 21, United States Code, Section 846.

2       Specifically, defendant pled guilty to conspiracy to

3   distribute and possess with intent to distribute a quantity of

4   a mixture and substance containing marijuana, a Schedule I

5   controlled substance, contrary to the provisions of

6   Title 21, United States Code, Section 841(a)(1) and

7   Section 841(b)(1)(D), in violation of Title 21, United States

8   Code, Section 846.

9       Defendant acknowledged responsibility for the conduct

10  charged at Count 2 of the indictment and agreed that such

11  conduct could be considered by the United States Probation

12  Office in calculating a guideline sentencing range and by the

13  Court in imposing sentence.  Following a guilty plea, the

14  Court directed the probation office to prepare a presentence

15  investigation report and scheduled a sentencing hearing, which

16  was rescheduled for today.

17      The Court has received and reviewed the presentence

18  investigation report, addendum, and supplemental addendum

19  thereto prepared by the United States Probation Office.  The

20  Court has also reviewed the parties' sentencing memoranda.

21  Defendant's sentencing memoranda included a motion for

22  downward departure or variance on behalf of the defendant, and

23  the government has filed its opposition thereto.

24      On October 2, 2023, following briefing by both parties

25  and a supplemental addendum by the probation office, the Court

1    issued tentative findings and rulings in which it denied

2    defendant's motion for a downward departure on the basis of

3    overrepresented criminal history and minimal role, which the

4    Court now adopts as final.  The Court has also reviewed the

5    sentencing memorandum of both parties.

6         The Court has also reviewed several sealed documents

7    filed at Document Number 131 and 139, including character

8    letters, treatment records, a psychological evaluation, a

9    letter from the defendant to the Court, and numerous

10   questionnaires related to defendant's work as a counselor in

11   recovery support programs.  Finally, the Court has reviewed

12   the sentencing recommendation prepared by the probation

13   office.

14        Sir, on March 28, 2023, you pled guilty to Count 1 of a

15   two-count indictment on a lesser-included offense of

16   conspiracy to distribute and possession with intent to

17   distribute a quantity of a mixture and substance containing

18   marijuana, a Schedule I controlled substance, contrary to

19   provisions of Title 21, United States Code, Section 841(a)(1)

20   and Section 841(b)(1)(D), in violation of Title 21, United

21   States Code, Section 846.  Correct, sir?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Following your guilty plea, I directed

24   the probation office to prepare a presentence investigation

25   report.  I've reviewed said report and the addendum and

1    supplement to addendum thereto and a sentencing recommendation

2    of the probation office.

3        Pursuant to the standing order of the board of judges of

4    this district, the Court finds it's not appropriate to

5    disclose the recommendation of the probation office to the

6    parties nor to counsel.  However, sir, in determining your

7    sentence, the Court will not consider any matter that's not

8    previously been disclosed to you or your attorney.

9        Counsel, have you reviewed the presentence investigation

10   report, addendum and supplemental addendum thereto, and

11   discussed them with your client?

12           MR. BAHURIAK:  Yes, Your Honor.

13           THE COURT:  Are there any errors in the presentence

14   investigation report, addendum, or second addendum that you've

15   not previously called to the Court's attention?

16           MR. BAHURIAK:  No, Your Honor.

17           THE COURT:  Sir, have you reviewed the presentence

18   investigation report, addendum and supplemental addendum

19   thereto, and other matters and discussed them with your

20   attorney?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  Counsel, is there any legal cause why

23   sentence should not be pronounced?

24           MR. BAHURIAK:  No, Your Honor.

25           THE COURT:  Anything else you would like to say or

1    the defendant would like to say, now would be the appropriate

2    time, please.

3              MR. BAHURIAK:  Thank you, Your Honor.  Your Honor, as

4    we indicated, there was a detailed presentence report in this

5    case, Judge.  The case has also been amply briefed by both

6    sides, so I know the Court has a lot of information already

7    available.

8         So I don't want to go ahead and repeat everything the

9    Court already has to consider, but I would like the Court to

10   note before we begin that Mr. Rodriguez is accompanied in

11   court by his family, members of his community -- that is,

12   people who live near him -- who've known him for his entire

13   lifetime and some who have only known him through his

14   treatment efforts.  He is not only involved in some drug

15   treatment, but it's pretty intense drug treatment.  He's being

16   drug tested by several different agencies.

17        He also, Judge, is -- his story, I think, was so

18   compelling to those who he's been helping through a veterans

19   treatment program that he was at some point asked to speak,

20   and the Court gave him leave to participate in that program;

21   and he, in fact, has become a speaker.  And in the short time

22   -- relatively short time that he's been involved as a speaker,

23   he's really touched a number of people's lives to the extent

24   that they wanted to attend today's hearing.  Nobody here --

25             THE COURT:  I want to thank everyone that came here.

1    I saw many of you coming into the building.  I'm sure for many

2    of you it was not very convenient to get here, so I want to

3    thank you for your effort to be here today.

4        And I've read all the material that's been sent to us;

5    so, as you said, there's no need to repeat that, but I'd be

6    pleased to hear from the defendant if there's anything he

7    would like to say.

8             THE DEFENDANT:  Yes, Your Honor.

9             THE COURT:  If you're going to read a statement, you

10   can be seated, be comfortable, and read slowly so the court

11   reporter can get down everything that you say.

12            MR. BAHURIAK:  Judge, if I may -- my apologies, but I

13   know there was somebody who wanted to speak on Mr. Rodriguez's

14   behalf.  I'm just not sure if you want that after or before.

15            THE COURT:  I'll take it now, then.

16            MR. BAHURIAK:  Thank you, Your Honor.  Your Honor, I

17   have Mr. Pamfilo -- spell your last name.  I'm sorry.  Come to

18   the microphone, sir.

19       Would you like him up here, Judge?

20            THE COURT:  Stand right there, please.

21            MR. DACUA:  Last name is Dacua; D, as in David,

22   a-c-u-a, Dacua.  Good morning, Your Honor.  First, thank you

23   for allowing me to present to the Court to advocate on behalf

24   of Mr. Rodriguez.  My name is Pamfilo Dacua, III.  I am a U.S.

25   Army veteran.  I am a certified recovery specialist with the

1    Veterans Multi-Service Center in Philadelphia, also a U.S.

2    Army veteran myself.

3        I have worked in public health, the compassionate care

4    field, for a very, very long time, beginning as an HIV

5    counselor and tester and a prevention specialist, moving now

6    to fighting the opioid epidemic in the city, really in our

7    country.  I have 32 people on my caseload.  I have encountered

8    many, many difficulties and hardships in trying to get people

9    into treatment and to help them maintain their recovery.

10       It's a very arduous journey for myself as well as for the

11   participants.  I say for myself because I make a connection

12   with them; and it's heartbreaking, trying to get them into

13   treatment and seeing the barriers that they face.  Once we're

14   able to breach those barriers, and help them sustain.

15       I've known Hector for a while.  I ran into him, and we

16   started talking.  He shared what he was doing.  I took a look

17   at him, looked him square in the eyes, and I smiled because I

18   know when someone is actually internally motivated for their

19   success.  After speaking with Hector for several

20   conversations, I was thoroughly convinced that he was on the

21   right path and asked him if he wouldn't mind presenting his

22   story to my group of participants.

23       One of the treatment modalities that we use is life-to-

24   life experiences, trying to help folks understand that they're

25   not special or unique just going through this process of

1   addiction, that recovery and wellness is possible.  And when

2   we find men and women that are actually victorious in their

3   wellness journey, I try to grab them, get them to speak with

4   my folks.  I have a couple folks here.  The rest of the group

5   wanted to come, but it wasn't practical to bring the entire

6   group to support Hector in this process.

7       And working with him and watching his interaction with

8   the men and women veterans that are part of my groups, I have

9   seen the impact that he has made with them by sharing his

10  struggles.  He shared with them -- not just with them -- not

11  just his successes, but his times of anxiety and trepidation

12  because he had this hanging over his head.

13      And I asked him to please share this aspect of his life

14  with them so that they can understand that here's a man that

15  has something very serious weighing on him through his own

16  fault, but he hasn't relapsed, he hasn't slipped backward, he

17  hasn't resorted back to any old negative behavior.  And that

18  is a monumental change in the right direction.

19      And when our folks saw that -- I know you guys have some

20  of the extra questionnaires.  Some of them are very good; you

21  know, some so-so.  But the one -- after I reviewed them, the

22  one thing that I got after I spoke with the group is if he

23  could do it, facing what he's facing, that they could possibly

24  do it, as well.

25      When Hector speaks with our groups, it's a little

1   different.  They get sick and tired of me because I'm with

2   them all day, every day.  But it's gotten to the point now

3   where they ask, "Hey, is he coming in today?"  They look

4   forward to his input; because to our group and to myself, he

5   is a winner, despite what's going on here.

6       With his maintaining his wellness and his recovery, he's

7   all in on it, and I'm happy to offer him employment, when you

8   come home -- and we talked about that before -- to continue

9   helping our folks.  There's even a mechanism that's in place

10  while he's away, if he can work it out with his counselors

11  there, where he can participate via closed circuit TV or Zoom.

12      September was national recovery month.  I had an event

13  planned in the building, but I had to go away for two weeks

14  for training; so that was rescheduled to, I think,

15  November 19th.  It's a graduation and a commemoration of just

16  all of their hard work.  Even though Hector is on the

17  periphery of the group, he's still part of our group family.

18  He's just made a world of difference with our men and women

19  veterans.

20      I put in the letter:  The fact that he's not a veteran

21  and is willing to help men and women struggling, not just the

22  regular folks, but to come -- a lot of people don't want to

23  deal with our veterans because they feel that maybe we're a

24  black eye on the military because we have substance use

25  issues, mental health issues, homelessness, or it touches with

1    incarceration.  No matter what, they're still human beings,
2    and they're still signed up to fight and defend this country.
3         And Hector has taken it upon himself to really get
4    engaged with our men and women, not being a veteran, but
5    wanting to be supportive of them and to show them that, "Hey,
6    listen, I didn't live a perfect life, and I have addictions
7    just like you all, but I'm beginning."  He's recovering.
8         I have full faith that he will maintain his recovery, not
9    just in his addiction, but also with this criminal lifestyle.
10   I think this is all over.  I think moving forward he will be
11   the model citizen.  You see the support of his friends and
12   family.  As I said, two of my group came.  The rest of them
13   really wanted to be here, but I have a little teeny, tiny car,
14   and I couldn't get everyone in.
15             THE COURT:  Thank you very much.
16             MR. DACUA:  I appreciate your time, and thank you for
17   letting me speak.
18             THE COURT:  Sir, thank you for your comments this
19   morning.  As you can see by the flags that are on my bench, I
20   had a grandfather that was in the Spanish-American War.  My
21   father's flag is also here.  He was in World War II and landed
22   at Utah Beach in Normandy.  And my oldest son was in Iraq as a
23   Marine for nine months.  So I thank you for your service and
24   what you are doing.  So thank you.
25             MR. DACUA:  You're welcome, Your Honor.

1            MR. BAHURIAK:  Your Honor, I'm sorry, but I was asked

2       by his daughter as a final speaker this morning, Kieran

3       Rodriguez, who came from Tennessee to speak on her dad's

4       behalf.

5            THE COURT:  Certainly.  Do you have any other people

6       that want to speak?

7            MR. BAHURIAK:  No, Your Honor.  I mean, they want to,

8       but they're not going to.  I promised her I'd give her a

9       moment to speak.

10            THE COURT:  Did you have any questions of the

11       gentleman who just spoke?

12            MS. SULIA GOODMAN:  No questions, Your Honor.

13            THE COURT:  Ma'am.

14            MS. RODRIGUEZ:  Good morning, Your Honor.  So as you

15       were told, my name is Kieran, and I am Hector's oldest child.

16            THE COURT:  Last name is?

17            MS. RODRIGUEZ:  Rodriguez.  Kieran Rodriguez.  I'm

18       the oldest of six.  So I'm here for -- I'm speaking on behalf

19       of myself and my siblings.  I want to start off by saying that

20       the change I have seen in my father over these past two years

21       has been drastic.  For the first time in my life, I know that

22       he is truly remorseful for his actions and understands the

23       severity of this completely.

24         These years have opened his eyes to the fact that his

25       actions now and in the past have taken him away from the

1    people he loves and that love him dearly for too long.  I am

2    so proud of him and the progress that he has made, as I have

3    seen him put effort into himself like no other time before.

4        He is in therapy; and once a week, as you heard, he

5    devotes time to veterans in tough situations.  That shows my

6    father's true character, Your Honor.  He is a person who gives

7    and gives and gives and never takes.  He is someone that

8    everyone in this room behind me and even strangers can count

9    on.

10       My brother Liam and I grew up with him in and out of the

11   prison system.  Of course, it wasn't easy.  But for the past

12   several years, he has been the only -- the one and only stable

13   parent figure that we have had in our lives.  My brother Liam

14   is a senior in high school.  He is graduating in June; and he,

15   along with all the rest of my siblings, rely on my father

16   heavily for all basic necessities.

17       The last thing that I want as their big sister, because I

18   know how it feels to not have your dad, is for them to not be

19   home -- is for him to not be home with us.  But, again, I am

20   completely aware and understand that he must face consequences

21   for his actions.  Without him, I would not have graduated from

22   high school.  I would not have graduated as an LPN this past

23   August.  He is our rock.

24       And, of course, sir, any time away from our father is too

25   much time for us; but, like I keep saying, we are fully aware

that he must face consequences.  So I humbly and respectfully

ask you to please use your best discretion and to not take our

father away from us for too long.  All of us in this room

thank you greatly for your valuable time and your

consideration.

THE COURT:  Thank you, ma'am.

Mr. Rodriguez, anything you wish to say?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You can remain seated, be comfortable,

and read slowly, please.

THE DEFENDANT:  First off, Your Honor, I want to

humbly apologize to Your Honor, my state, my local and federal

government, to the City of Pittsburgh and the County of

Allegheny, to my entire family for my actions and my selfish

decisions which have me standing in this courtroom this

morning.  I'm ashamed of myself for my poor decisions, for my

shortsighted thinking as a 42-year-old man, as a 42-year-old

father.  I'm colossally embarrassed beyond words and beyond

measure to be here at my own sentencing.

As a father of my six kids, who rely upon me for support

and love and encouragement, I have jeopardized each of their

well-beings.  I make no excuses in my statement today, Your

Honor.  Everyone has obstacles to overcome, and I let mine

beat me in the past.

But today I want to express myself and leave not a trace

1    of doubt that I accept responsibility; and for the past two
2    years, most of which I've been strictly indoors on house
3    arrest, that I reflected more deeply and sincerely than ever
4    before in my life.  It has made me stronger and more focused,
5    and I am definitely changed for the better.
6         Growing up wasn't easy for me, Your Honor.  I was
7    10 years old when my mother and my grandmother were arrested.
8    I had to fend for myself from that point forward.  I had no
9    stability whatsoever.  I needed to learn how to survive on my
10   own.  My addiction controlled many aspects of my everyday
11   life, and I ended up with a full-blown opioid addiction.
12        Looking back, I see how lost I was.  I've been in and out
13   of trouble with the law since I was a teenager.  When I was
14   younger, I never reflected on the negative patterns of my
15   life.  I let my life spiral out of control, and I made one
16   wrong decision after another.  Despite all of this, I became a
17   father to my six kids.  I loved them deeply, but I often
18   prioritized feeding my addiction over nurturing them.
19        I committed this crime for which I now stand before Your
20   Honor during one of my lowest points.  I ignored the risks and
21   once again opted for the opportunities to make quick money to
22   support my family.  I was wrong.  I was wrong in so many ways
23   but not because I got caught but because what kind of example
24   was I setting?  I allowed my addictions to cloud my judgment
25   and thought only of myself and my immediate needs.  I failed

1    to consider how my actions would affect others.

2        I was taking shortcuts that hurt the people I love the

3    most.  But again, Your Honor, it's not only about the people I

4    love.  More importantly -- it's not about the people I love.

5    Everyone has people they love.  And being a part of the drug

6    trade affects all of them, also.

7        I met my father seven years ago.  He died the day before

8    I was arrested.  He was also an addict.  Seeing myself repeat

9    those same patterns as my dad, I was forced to ask myself:  Do

10   I want to pass those same patterns down to my kids?  Seeing

11   that pattern and finding my ability to rise above all of this

12   is why I can promise you I will never come back into the

13   courtroom.  It stops here, Your Honor.  I've worked very hard

14   to change.  I've grown, and I'm determined to be a force for

15   good.

16       I've been in the MAT program for the last two years, and

17   I'm proud to say I've been clean the entire time.  I know my

18   pattern, and staying clean is critical to becoming a positive

19   part of my community.  I made the humble decision deep in my

20   heart, and I've not returned to how things were.  I see

21   clearly how my addiction has hurt everyone around me.

22       I've been speaking twice a week to veterans struggling

23   from their respective addictions.  I shared my story with them

24   to help them see my hard-earned truths.  I know it might sound

25   corny coming from me, but working with this group makes me

1   even more grateful for the opportunities and freedoms we have

2   as Americans.  Many of the men and women in the group have

3   given everything so I can have the freedom to live the life I

4   choose.

5       I've squandered my opportunities up until this point in

6   my life as a result of the poor decisions I've made.  Some of

7   the lower times I've had with my family are behind me.  I've

8   worked diligently through both easy and tough times.  I've

9   shown my family; community; and, most importantly, myself that

10   this is a fundamental change in my person and character.  I

11   have made poor decisions in my life, and I'm determined to

12   make amends and do all I can for my past misdeeds.

13       This process necessarily started by taking responsibility

14   for my past.  I had begun the process of building the bridges

15   that I burnt and working on regaining the trust of my family

16   and community.  I made these efforts because I am determined

17   to return as a positive member and influence on my community.

18       Once again, Your Honor, I apologize for my actions, and I

19   take full responsibility for the harm I've caused.  I'm

20   committed to continuing these positive changes in my person

21   and my life.  I am steadfast in my determination to never,

22   ever be before this or any other court.  Thank you for your

23   time and your consideration.

24           THE COURT:  Are you satisfied with the service and

25   representation provided by your attorney?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Has he done everything you've asked him

3     to do?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Did he do anything you believe he should

6     not have done?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  On behalf of the government?

9          MS. SULIA GOODMAN:  Thank you, Your Honor.  I don't

10    have much to add.  The government has submitted a sentencing

11    memorandum and also a response to the defendant's request for

12    a downward departure.  I will just add, Your Honor, that the

13    government's response to the motion for downward departure

14    reflected the fact that the government doesn't believe that

15    the factors cited by the defendant warranted a formal

16    departure under the United States Sentencing Guidelines.

17         The defendant has also asked for a variance, and the

18    government would just note that I think this is a truly

19    extraordinary and definitely unusual number of people that are

20    here to support the defendant today.  It is not common to see

21    this many people supporting a defendant at the time of

22    sentencing.

23         I think that's certainly a factor the Court should

24    consider and can consider with respect to the defendant's

25    motion for a downward variance.  It definitely takes, I think,

1    the defendant out of the -- sets the defendant apart a little

2    bit from most of the people that appear for sentencing before

3    the Court.  Other than that, I have nothing further to add,

4    Your Honor.  The government just requests a sentence that is

5    consistent with the goals of sentencing and with the factors

6    set forth at 3553.

7              THE COURT:  Any objection to my speaking to the

8    probation officer?

9              MS. SULIA GOODMAN:  Not from the government, Your

10   Honor.

11             THE COURT:  Any objection?

12             MR. BAHURIAK:  No, Your Honor.

13             THE COURT:  Ma'am, do you want to come over here,

14   please.

15        Play some music, please, white noise.

16        (Pause in the proceedings.)

17             MR. BAHURIAK:  Your Honor, if I -- sorry to interrupt

18   again, but before we move to sentencing, I just have a couple

19   of things I'd just like to say real quickly, if that's okay.

20             THE COURT:  Certainly.

21             MR. BAHURIAK:  Would you like that now, Judge?

22             THE COURT:  Please.

23             MR. BAHURIAK:  Thank you, Your Honor.  Judge, with

24   respect to his supervision, his pretrial supervision, I'm

25   sure -- I have no concerns at all about any report from

1   pretrial, because this man has been a model since the day he
2   was placed on detention.  But I want to point out, Judge, that
3   he was on home incarceration, not home detention but 24-hour
4   home incarceration, for 19 months.
5       Unlike nearly all of my other clients who get placed on
6   home detention -- I could probably hire a full-time person to
7   answer the phone for the people who want to get off home
8   detention and want to move to some lower supervision.  But not
9   with Mr. Rodriguez.  He wanted to remain on home incarceration
10  because he needed to work on his withdrawal, his addiction,
11  his issues, his mental health issues; and he got involved
12  immediately in online activities, got involved in some Zoom-
13  type virtual counseling and that sort of thing.
14      And he didn't leave the house at all, as if he were
15  incarcerated, for a period of 19 months.  I just want that to
16  stand out to the Court, Judge; at least to highlight that,
17  despite the fact that those were his conditions, he complied
18  to the letter.  In fact, the only reason he even asked to move
19  to home detention was because he saw an opportunity to make a
20  little bit more money to support his family.  He started a
21  business while he was home.  He is a very hardworking, very
22  bright young man.
23      He's been a drug addict since he was 11 years old.  Never
24  stood a chance.  I mean, the veteran psychologist that I had,
25  who worked for the Commonwealth of Pennsylvania for probably a

decade, said it's one of the worst cases of child abuse he's
ever seen.  They have what's called an Adverse Childhood
Experience scale.

And on the scale, Judge, they talk about people who score
a 6 out of a 10 on the Adverse Childhood Experiences scale
have a 20-year lower life expectancy than people who don't.
They have nearly no chance of growing into adulthood without a
major personality disorder or substance abuse disorder.
That's 6 out of 10.  Mr. Rodriguez scored a 9 out of 10.

Despite that, Judge, you heard from his daughter -- and
you might recognize her name, Your Honor, because one of the
accommodations that we asked for while he was under pretrial
supervision was so that he could travel to Tennessee to watch
her graduate from nursing school.  That's the young lady who
just spoke.  He went to her pinning ceremony.  This homeless
kid, drug addict since he was 11, just supported a girl
through nursing school.

His next oldest -- stand up, please.  This young man
here, Judge, is his 17-year-old son Liam.  He's a senior; is
that right?  He has a 3.9 grade point average.  He wants to go
to college.  Come, please.  He has four other kids under the
age of 8.  I just want the Court to consider, despite the
adversity, the positive impact that he's had on his family,
Judge; and those other four kids who are coming up, the
hardship that it would entail to them and the ability that he

1    has to do right by his kids if given the opportunity.

2         One of the things that we negotiated in this case with

3    the predecessor to counsel here was just simply agreeing to an

4    851 enhancement; the reason being, Judge, it would give the

5    Court an option for an eight-year period of post incarceration

6    supervision on supervised release.  And I guess what I'm

7    asking the Court, Your Honor, is:  Consider the fact that he's

8    done the home incarceration, consider the option of an

9    extended period of supervised release.

10        And I know it's a big ask, seeing where the numbers score

11   out here, Judge, but this is a man who has accepted real

12   responsibility, demonstrated by his actions.  Unlike other

13   people involved in this case, Judge, he has shown, through his

14   actions, true remorse; extraordinary acceptance of

15   responsibility; and he has potential to raise a family to

16   break this cycle.  He's shown that, and he can continue to

17   show that.

18        And I would ask the Court to consider a variance down to

19   a Zone C, to where he could actually serve a sentence on some

20   type of continued high-level monitoring on some kind of home

21   detention scenario, Judge, and I don't think we'll be

22   disappointed when Mr. Hector Rodriguez is done.  That's all,

23   Judge.  Thank you.

24             THE COURT:  Thank you for your service in

25   representing him.

1          The United States sentencing guidelines are advisory

2     only.  The Court has discretion to vary or deviate from the

3     guidelines after considering the relevant factors set forth in

4     Title 18, United States Code, Section 3553(a).  The Court must

5     rule on any motions for departures or requests for variance.

6     Before the Court considers motions for departures or requests

7     for variance, defendant's offense level is 19; Criminal

8     History Category is VI, which is the highest Criminal History

9     Category.

10         So, accordingly, the advisory guideline range is 63 to

11    72 months imprisonment, supervised release of four years, a

12    fine of $10,000 to $500,000, and a special assessment of $100.

13    Is my statement -- the high end of the guideline range is

14    78 months.  So is my revised statement as to the defendant's

15    offense level, Criminal History Category, and advisory

16    guideline range correct?  On behalf of the government?

17              MS. SULIA GOODMAN:  Yes, Your Honor.

18              THE COURT:  Defendant?

19              MR. BAHURIAK:  Yes, Your Honor.

20              THE COURT:  Defendant filed a motion for downward

21    departure in his sentencing memorandum on the basis of a

22    minimal role participant and overstated criminal history, both

23    of which the Court denied in its tentative findings and

24    rulings at Document Number 140 on October 2, 2023.

25         Taking into consideration the parties' arguments and the

1    facts in this case, as I will explain in greater detail in a

2    few moments, defendant's motion for downward departure has

3    been denied because the downward departure in this case would

4    not result in a sentence that is sufficient but no greater

5    than necessary to satisfy the purposes of sentencing, which

6    are just punishment, deterrence, protection of the public, and

7    rehabilitation of the defendant.

8        Defendant, alternatively, has requested a downward

9    variance from the advisory guideline sentence.  As I will

10   explain in a few moments in detail, taking into consideration

11   the factors set forth in Title 18, United States Code,

12   Section 3553(a), as applied to the facts of this case,

13   defendant's request for a downward variance is granted, as the

14   Court finds a sentence within the advisory guideline range is

15   greater than necessary to satisfy the purposes of sentencing,

16   which includes just punishment, deterrence, protection of the

17   public, and rehabilitation of the defendant.

18       As to requests that the defendant wishes for me to make

19   to the Bureau of Prisons, does the defendant wish to be

20   located as close as possible to some geographical area?

21       MR. BAHURIAK:  He does, Judge.  My recommendations

22   would be to Allenwood, FCI Fort Dix.

23       THE COURT:  Okay.  So --

24       MR. BAHURIAK:  Allenwood Low FCI.

25       THE COURT:  He wants to be incarcerated as close as

1    possible to what city or state?

2            MR. BAHURIAK:  Lancaster, PA, and Philadelphia,

3    Judge.

4            THE COURT:  I ask that the Bureau of Prisons consider

5    placing the defendant as close as possible to the City of

6    Philadelphia and, in particular, to the -- what prison?

7            MR. BAHURIAK:  The Allenwood Low.

8            THE COURT:  Is that l-o-w?

9            MR. BAHURIAK:  Yes, Your Honor.

10           THE DEFENDANT:  It's A-l-l-e-n.

11           MR. BAHURIAK:  Allenwood, Judge.  FCI Allenwood.

12           THE COURT:  And does he want any particular job

13   training, vocational training?

14           MR. BAHURIAK:  Judge, he's looking for access to an

15   RDAP program and the MAT program that he continues to do now.

16   That would be M-A-T program.

17           THE COURT:  My question was a different question.  My

18   question was:  Does he want any particular vocational

19   training?  Carpentry?  Construction?  HVAC?

20           MR. BAHURIAK:  HVAC or carpentry, Your Honor,

21   whichever is available.

22           THE COURT:  Okay.  So it would be a construction

23   trade, in particular carpentry or HVAC.

24        Any objection to the recommendation as to the RDAP

25   program?

1          MS. SULIA GOODMAN:  No objection, Your Honor.

2          THE COURT:  That's three requests.  Any other

3   requests that I make recommendations about?

4          MR. BAHURIAK:  Just the recommendation for the MAT

5   program, Your Honor, which would be a drug treatment program.

6          THE COURT:  And that's different than RDAP?

7          MR. BAHURIAK:  I believe so, Your Honor.  It's

8   something he's involved with now, and I believe he has access

9   through the Bureau of Prisons.

10          THE COURT:  I'm saying the RDAP program or the MAT

11   program.

12          MR. BAHURIAK:  Both, Your Honor, if possible.

13          THE COURT:  And/or.  You can put and/or.

14          MR. BAHURIAK:  Thank you, Your Honor.

15          THE DEPUTY CLERK:  Is that MAT, M-A-T?

16          MR. BAHURIAK:  M-A-T.

17          THE COURT:  As in Tom?

18          MR. BAHURIAK:  Yes, Your Honor, as in tango.

19          THE COURT:  Any objection to the defendant being --

20   to self report?

21          MS. SULIA GOODMAN:  No, Your Honor.  I've spoken with

22   the probation office this morning.  The defendant has been

23   compliant with all conditions of release for, you know, two

24   years now.  The government doesn't have any reason to believe

25   that at this point he poses a danger to the safety of the

1    community or a flight risk.

2              THE COURT:  Sir, your sentence is as follows.

3    Pursuant to the Sentencing Reform Act of 1984, it is the

4    judgment of the Court the defendant be sentenced to 48 months

5    imprisonment, followed by four years of supervised release.

6    Within 72 hours of release from the Bureau of Prisons,

7    defendant shall report in person to the probation office in

8    the district to which the defendant is released.

9         While on supervised release, defendant shall not commit

10   another federal, state, or local crime; shall comply with the

11   standard conditions that have been adopted by the Court; and

12   shall comply with the following additional conditions.  One,

13   defendant shall not illegally possess a controlled substance.

14   Supervised release must be revoked for possession of a

15   controlled substance.

16        Two, defendant shall not possess a firearm, ammunition,

17   destructive device, or any other dangerous weapon.  Supervised

18   release must be revoked for possession of a firearm,

19   ammunition, destructive device, or other dangerous weapon.

20   Three, defendant shall participate in a program of testing

21   and, if necessary, treatment for substance abuse, said program

22   approved by the probation officer until such time as defendant

23   is released from the program by the probation officer and/or

24   the Court.

25             Defendant shall be required to contribute to the cost of

1    the services for any such treatment in an amount to be

2    determined by the probation officer but not to exceed actual

3    costs.  The defendant shall submit to one drug urinalysis

4    within 15 days after being placed on supervision and at least

5    two periodic tests thereafter.

6        Four, defendant shall not purchase, possess, and/or use

7    any substance or device designed to alter in any way or

8    substitute defendant's urine specimen for drug testing.  In

9    addition, defendant shall not purchase, possess, and/or use

10   any device designed to be used for the submission of a

11   third-party urine specimen.

12       Five, defendant shall submit his person, property, house,

13   residence, vehicle, papers, business, or place of employment

14   to a search conducted by a United States probation officer at

15   a reasonable time, in a reasonable manner, based on a

16   reasonable suspicion of contraband or evidence of a violation

17   of a condition of supervision.  Failure to submit to a search

18   may be grounds for revocation.  Defendant shall inform any

19   other residents that the premises may be subject to searches

20   pursuant to this condition.

21       Six, defendant is prohibited from incurring any new

22   credit card or opening any additional lines of credit without

23   prior written approval of the probation officer.  Seven,

24   defendant shall provide the probation officer with access to

25   any requested financial information.

1    Eight, defendant shall pay a fine in the amount of $1,500

2    to the Clerk of Court, Attention Finance Department, 700 Grant

3    Street, Suite 3110, Pittsburgh, Pennsylvania  15219.

4    Defendant shall make payments to satisfy this criminal

5    monetary penalty in the following manner:  A, monthly payments

6    of $100 or 5 percent of defendant's gross monthly income,

7    whichever is greater.

8    B, the first payment being made within 30 days following

9    defendant's discharge from incarceration and continue until

10   the criminal monetary penalty is paid in full.  And, C,

11   defendant shall be responsible for providing proof of payment

12   to the probation officer as directed.

13   Nine, defendant shall cooperate in the collection of DNA

14   as directed by the probation officer.  The Court also imposes

15   a mandatory special assessment of $100, constituting $100

16   special assessment at each count to which defendant has pled

17   guilty, which shall be paid to the Clerk of Court forthwith.

18   Sir, the reason for your sentence is as follows:  I have

19   granted you a variance from the recommended guideline range,

20   in part because of your statement and the statements made by

21   your family members and other support, statements that have

22   been made and filed in this case.  I take your statement as

23   being sincere.  Your request for a noncustodial sentence or a

24   sentence below 48 months, however, is a bridge too far in

25   light of the serious criminal activity you engaged in.

1        The Court considers the sentence of 48 months

2   imprisonment and four years supervised release and the fine to

3   be sufficient but no greater than necessary to comply with the

4   goals of sentencing as set forth in Title 18, United States

5   Code, Section 3553(a)(2), which are to reflect the seriousness

6   of the offense, to promote respect for the law and provide for

7   just punishment for the offense, to afford adequate deterrence

8   to criminal conduct, protect the public from further crimes by

9   this defendant, and to provide the defendant with needed

10  educational or vocational training, medical care, or other

11  correctional treatment in the most effective manner.

12       The Court has considered all the sentencing factors set

13  forth in Title 18, United States Code, Section 3553(a),

14  including those presented by the defendant and the government

15  and as set forth in the presentence investigation report and

16  the addendum and supplemental addendum thereto.

17       The defendant seeks a sentence of house arrest and has

18  consistently maintained his opinion that the sentence of

19  imprisonment is not appropriate based on his rehabilitation

20  and community service, among other things.  However, as the

21  Court said, that would not provide for just punishment for the

22  seriousness of his offenses.

23       The Court has also considered, first, the nature and

24  circumstances of the offense as set forth in Paragraphs 1

25  through 21 of the presentence investigation report, which the

1  Court incorporates by reference.  The defendant has pled

2  guilty to a lesser-included offense for his role in the

3  conspiracy and is responsible for 80 to 100 kilograms of

4  marijuana, a Schedule I controlled substance.

5      Defendant was identified as the source of supply of

6  marijuana for codefendant Muessig, M-u-e-s-s-i-g, who, in

7  turn, was a source of supply of marijuana for the SCO drug

8  trafficking gang operated in the Braddock, Pennsylvania,

9  community.  In May of 2019, defendant traveled to Pittsburgh

10 and met with Muessig for the purpose of trafficking marijuana.

11 In its tentative findings and rulings, the Court has declined

12 to agree with defendant that his role was minimal in this

13 criminal enterprise.

14     Two, the Court has considered defendant's personal

15 characteristics, family, criminal, and social history as set

16 forth in the PSR in Paragraphs 31 through 71, which are

17 incorporated by reference in my statement of reasons.

18 Defendant is 42 years old, grew up in an extremely unstable

19 environment.

20     As defense counsel accurately pointed out, both his

21 parents were heavy drug users; and defendant and siblings and

22 mother were living in grandmother's residence with very little

23 parental or financial support until both his mother and

24 grandmother were arrested for drug distribution offenses when

25 the defendant was approximately 10 years old.

1    Defendant left school at the time, and his own admission
2    was he was on the street.  His older sister, who was close
3    family support, obtained legal guardianship of the defendant
4    when he was approximately 13 years old.  He's resided in
5    Philadelphia since the age of 16.
6        He has six children, several of which, if not all, are
7    here today, and we've heard from them.  He does have his GED
8    and, it's reported, has a large number of assets that are
9    summarized in the presentence investigation report, which
10   is one of the reasons why I've ordered a fine, a modest fine
11   of $1,500.
12       As I've said and as defense counsel has pointed out in
13   detail, defendant has had a long -- significant lifetime
14   history of drug addiction and abuse.  I appreciate the
15   statement made by the gentleman relating to the service on
16   behalf of veterans, and I have recommended that the defendant
17   participate in the 500-hour comprehensive RDAP program for
18   drug treatment.
19       Third, the Court has considered the kinds of sentences
20   available for these offenses and the sentencing guideline
21   range under the advisory guidelines and applicable policy
22   statements adopted by the Sentencing Commission.  And, fourth
23   and finally, the Court has considered the need to avoid
24   unwarranted sentencing disparities among defendants with
25   similar records who have been found guilty of similar conduct.

1    The Court notes that his codefendant was sentenced to

2    60 months imprisonment despite the fact that the codefendant

3    had a Criminal History Category I, whereas defendant has the

4    highest possible Criminal History Category of VI.  But I

5    believe that the variance that I've pronounced is appropriate

6    in light of the defendant's statement and the statements made

7    by others here in public today and in the documents that I've

8    received.

9        On behalf of the government, does my statement of reasons

10   adequately address all objections, concerns, and issues

11   raised?

12            MS. SULIA GOODMAN:  It does, Your Honor.

13            THE COURT:  Are there any other sentencing factors

14   under Section 3553(a) that the Court has failed to address?

15            MS. SULIA GOODMAN:  No, Your Honor.

16            THE COURT:  On behalf of the defendant, has my

17   statement of reasons adequately addressed all objections,

18   concerns, and issues raised?

19            MR. BAHURIAK:  Yes, Your Honor.

20            THE COURT:  Are there any other sentencing factors

21   under Section 3553(a) that the Court has failed to address?

22            MR. BAHURIAK:  No, Your Honor.

23            THE COURT:  Have you spoke to your client about his

24   right to appeal?

25            MR. BAHURIAK:  Yes, Your Honor.

1          THE COURT:  Sir, you have the right to appeal, except

2     as otherwise waived in the plea agreement, from the orders of

3     this Court, the judgment of guilty, and/or from the sentence

4     imposed.  You have the right to have a lawyer represent you on

5     appeal at no cost to you.  If you cannot afford them,

6     certified copies of the necessary records and transcripts will

7     be furnished at the expense of the United States government.

8        If you appeal, any Notice of Appeal must be filed within

9     14 days of today.  Otherwise, you will lose your right to

10    appeal.  If you request, the Clerk of Court will immediately

11    prepare and file a Notice of Appeal on your behalf.  Do you

12    wish to appeal, sir?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  Do you understand if you change your mind

15    and decide to appeal, any Notice of Appeal must be filed

16    within 14 days of today?  Otherwise, you will lose your right

17    to appeal.

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  And if you change your mind and decide to

20    appeal, you'll use your current counsel for any such appeal,

21    correct?

22          THE DEFENDANT:  Correct.  Yes, Your Honor.

23          THE COURT:  Defendant is not in custody.  The

24    position of the Assistant U.S. Attorney is that it would be

25    proper for the defendant to voluntarily surrender.  Thus,

1    pursuant to Title 18, United States Code, Section 3143(a) and

2    3145(c), the Court finds by clear and convincing evidence,

3    including defendant's compliance throughout the term of his

4    pretrial release, that the defendant is not a flight risk

5    based on his ties to the community; because of his lack of

6    violent criminal history, he's not a danger to any other

7    person or the community; and that there are acceptable

8    circumstances.

9        Therefore, the Court orders that the defendant shall

10   voluntarily surrender to the institution designated by the

11   Bureau of Prisons as notified by the United States Marshals

12   Service but no later than the 4th day of October, 2023.  Up to

13   and including that date, the defendant shall remain subject to

14   all of the previous conditions that have been set by United

15   States Magistrate Judge Lenihan and this Court as part of his

16   pretrial release.

17       It is therefore ordered that the existing order for

18   release remains in effect, subject to the standard conditions

19   of release as set forth in the order setting conditions of

20   release and the following additional conditions.  One, if

21   defendant has a passport, within ten days defendant shall

22   surrender --

23       MR. BAHURIAK:  I'm sorry, Your Honor.  I believe the

24   Court said a surrender date of October 4th, which would be

25   tomorrow.  Maybe I heard it wrong, Judge.  We were asking for

1    a 90-day surrender date, with all due respect, Your Honor.

2            THE COURT:  I'll grant him 60 days to report, and the

3    report date will be on or before December 4, 2023.

4            MR. BAHURIAK:  Thank you, Your Honor.

5            THE COURT:  I'll start again on the conditions.  One,

6    if defendant has a passport, within ten days defendant shall

7    surrender said passport as directed by the probation office,

8    which shall hold such passport until the term of his

9    supervised release is complete.  Two, the defendant shall not

10   depart from the Eastern District of Pennsylvania.  Three, the

11   defendant shall refrain from possession of a firearm,

12   destructive device, or other dangerous weapon.

13        Four, the defendant shall refrain from excess use of

14   alcohol.  Five, the defendant shall refrain from the use and

15   unlawful possession of a narcotic drug unless prescribed by a

16   licensed medical practitioner.  Six, the defendant shall

17   submit to any method of testing required by the pretrial

18   service office for determining whether the defendant is using

19   a prohibited substance.  Seven, the defendant shall

20   participate in a program of inpatient or outpatient substance

21   abuse therapy and counseling if deemed advisable by the

22   pretrial service office.

23        Eight, the defendant shall refrain from obstruction in

24   any fashion of the efficiency and accuracy of any prohibited

25   substance testing, and defendant shall not purchase or possess

1    any device to provide for the use of a third-party urine

2    specimen.  Nine, the defendant shall report as soon as

3    possible to the pretrial service office any contact with any

4    law enforcement personnel, including but not limited to any

5    arrest, question, or traffic stop.  You understand, sir?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Do you also understand that you must

8    report as notified by the United States Marshals Service but

9    no later than the 4th day of December, 2023, or you will be

10   guilty of violating the Bail Reform Act, which carries a

11   maximum sentence of ten years imprisonment consecutive to any

12   other sentence I have imposed, a fine of $250,000, and could

13   result in the forfeiture of any bond posted?  You understand,

14   sir?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Do you have a count to dismiss?

17             MS. SULIA GOODMAN:  Yes, Your Honor.  At this time,

18   consistent with the terms of the plea agreement, the

19   government would move to dismiss Count 2 of the indictment as

20   to the defendant Hector Rodriguez.

21             THE COURT:  Any objection?

22             MR. BAHURIAK:  No, Your Honor.

23             THE COURT:  So granted.  Anything else on behalf of

24   the government?

25             MS. SULIA GOODMAN:  Nothing further, Your Honor.

1          THE COURT:  Anything else on behalf of the defendant?

2          MR. BAHURIAK:  Your Honor, I'm not sure if this is

3     the appropriate time, but I made some motions to seal the

4     documents that I had submitted on behalf of Mr. Rodriguez.  I

5     would just move to unseal those documents.  If I need to do

6     that here or if I can just submit something to --

7          THE COURT:  I think we need something in writing so

8     there will be no doubt as to your request.

9          MR. BAHURIAK:  Thank you, Your Honor.

10         THE COURT:  Anything else you want to say?

11         MR. BAHURIAK:  No, sir.  Thank you.

12         THE COURT:  I want to thank everybody that was here

13    today and for your statements on behalf of your father and

14    statements on behalf of his service to the veterans.  I know a

15    lot of you had to travel a substantial distance to be here, so

16    I want you to know that I appreciate your being here.  And I

17    appreciate the defendant's statement.  I know that you wanted

18    him home sooner than what I've ordered, but there has to be

19    consequences for his activity, and so I hope you understand my

20    decision in that regard.

21         I adjourn this hearing.  I would appreciate if you exit,

22    because I have another sentencing that I'm a little behind on.

23    So if you would kindly exit at your convenience, I would

24    appreciate it.

25         (The above-captioned matter was concluded.)

1                          C E R T I F I C A T E

2              I, DEBORAH ANN BETZLER, RPR, FCRR, certify that
   the foregoing is a correct transcript from the record of
3  proceedings in the above-entitled case.

4

5
   s\ Deborah Ann Betzler                    10/19/2023
6  DEBORAH ANN BETZLER, RPR, FCRR        Date of Certification
   Official Court Reporter
7